```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**SPECIAL AGENTS MUTUAL BENEFIT
ASSOCIATION,**

      **Plaintiff,**

**v.**                  **//**    **CIVIL ACTION NO. 1:13CV6**
                                       **(Judge Keeley)**

**SHARON COWGER,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

Pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court **GRANTS** the motion of the plaintiff, Special Agents Mutual Benefit Association ("SAMBA"), and **DENIES** the motion of the defendant, Sharon Cowger ("Cowger").

**I.**

SAMBA is a not-for-profit corporation that sponsors insurance plans for federal employees and their families. These plans are covered by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Cowger, a beneficiary under the SAMBA long-term disability plan (the "LTD Plan"), filed a claim in January, 2008, after being diagnosed with autoimmune hepatitis. SAMBA approved her claim in April, 2008 and awarded her monthly payments of $2,545.83 beginning retroactively in September, 2007.

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**  1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

Pursuant to the LTD Plan's summary plan description (the "SPD"), payments to the insured were to be reduced by all "Benefit Offsets," which included, <u>inter alia</u>, any payments for which the insured was eligible under the Federal Employees Retirement System ("FERS") and the Social Security Act ("SSA"). The SPD further provided that:

> We [SAMBA] have the right to recover from you [Cowger] any amount which We determine to be an Overpayment. You are obligated to refund to Us any such amount. Our rights and your obligations in this regard are set forth in the reimbursement agreement you are required to sign upon first qualifying for Disability benefits under the Program. For this provision, an Overpayment occurs when We determine that the total amount paid by Us for a period of Disability exceeds the total amount due under the Program. This includes Overpayment resulting from:
>
> 1. Retroactive awards received from sources shown in the Benefit Offsets section;
>
> 2. Fraud; or
>
> 3. Any error We make in processing your claim.
>
> We may, at Our option, recover the Overpayment by:
>
> 1. Reducing or offsetting any future payments to you or your survivor or estate;
>
> 2. Stopping future benefit payment (including the minimum monthly payment of $200) which would otherwise be due under the Program. Benefit payments will result after the Overpayment has been recovered; or

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**　　　　　　　　**1:13CV6**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

      3. Demanding an immediate refund of the Overpayment from you.

As part of her disability claim, Cowger was required to sign a reimbursement agreement (the "RA"), in which she promised to apply for any benefit offsets for which she might be eligible. She further agreed to "repay SAMBA the full amount of the benefit offsets that SAMBA determines are due under the terms of the SPD within 10 days after receiving SAMBA's determination." Finally, she agreed that her failure to comply with the terms of the RA would trigger SAMBA's right to terminate her LTD benefits.

In accordance with her obligations under the RA, Cowger applied for disability benefits under both the SSA and FERS. On November 11, 2008, she was awarded SSA disability benefits retroactively from January, 2008. She received a check for $9,333 to cover retroactive payments, and began to receive monthly checks for $1,244. In December, 2008, SAMBA notified Cowger that she owed it $12,440 in benefit offsets pursuant to the RA, and provided her with a payment plan that she was to sign by December 22, 2008. On December 20, 2008, Cowger sent SAMBA a $100 check towards reimbursement, but explained that she could not comply with the payment plan due to "extreme financial hardship." On December 29, 2008, SAMBA withdrew its payment plan offer and demanded

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**  1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

reimbursement in full. Additionally, SAMBA terminated Cowger's benefits under the LTD Plan based on her failure to comply with the terms of the RA.

On June 23, 2009, Cowger was awarded FERS disability benefits retroactively from August 2007. These included monthly payments of $2,132.00, which were reduced to $1,012.00 in January, 2008, and reduced again to $749.00 in September 2008. The FERS benefits, combined with the SSA benefits, resulted in a total overpayment of $28,127.50 by SAMBA to Cowger as of December, 2008, when payments under the LTD Plan ceased.[1]

In January, 2009, SAMBA submitted Cowger's file to a collection agency. After unsuccessful efforts to obtain reimbursement, SAMBA commenced this action on December 4, 2012. It filed an amended complaint on December 13, 2012, asserting equitable relief under ERISA, § 1132(a)(3), specifically equitable restitution of the value of the overpayment, including pre and post-judgment interest at the rate prescribed by the RA, as well as attorneys' fees and costs, pursuant to § 1132(g)(1). On January 11,

---

[1] In its amended complaint and motion, SAMBA seeks reimbursement of $28,148.21. Cowger, however, only concedes a reimbursement amount of $28,127.50 ($20.71 less than the amount sought). Because at summary judgment all disputed facts are resolved in favor of the non-moving party, the Court relies on the amount proffered by Cowger.

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**  1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

2013, Cowger filed a counterclaim, alleging entitlement to unpaid LTD benefits since December, 2008. On March 21, 2013, both parties filed motions for summary judgment.

## II.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth, and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER          1:13CV6**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III.

At the outset, the Court addresses whether SAMBA may properly pursue an action for equitable restitution under ERISA, which provides as follows:

> A civil action may be brought -- (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

§ 1132(a)(3).

In Sereboff v. Mid Atl. Med. Svcs., Inc., 547 U.S. 356 (2006), the United States Supreme Court articulated the features of relief properly characterized as "equitable" under § 1132(a)(3)(B). Equitable restitution must seek to "impose a constructive trust or equitable lien on 'particular funds or property in the defendant's

6

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**  1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

possession.'"  Sereboff, 547 U.S. at 362 (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)).

Notably, Sereboff further explains that, notwithstanding the possession and particularity requirements, a plaintiff suing under § 1132(a)(3)(B) also must demonstrate that the basis for his or her claim is equitable rather than legal.  547 U.S. at 363.  While the Supreme Court observed that equitable restitution typically involves "strict tracing rules," it determined that equitable liens created by agreement do not require the traceability of the funds sought.  Id. at 364-65 (citing Barnes v. Alexander, 232 U.S. 117 (1914)).  Moreover, "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed."  Sereboff, 547 U.S. 366.

Here, Cowger has possession of the funds to which SAMBA asserts a claim.  Moreover, courts have determined that particularity is satisfied in circumstances where, as in this case, the beneficiary has received benefits under both a long-term disability plan and the SSA, and the fiduciary asserts an equitable lien on the overpayment amount.  See, e.g., Cusson v. Liberty Life Assur. Co., 592 F.3d 215, 230-31 (1st Cir. 2010); Dillard's Inc. v. Liberty Life Assur. Co., 456 F.3d 894, 901 (8th Cir. 2006).

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**         **1:13CV6**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

Finally, the SPD and RA gave rise to SAMBA's equitable lien on the overpayment amount, and, according to the Supreme Court, the contracts' <u>ex ante</u> existence is of no relevance. Thus, <u>Sereboff</u> and its progeny establish that SAMBA may assert an equitable claim pursuant to § 1132(a)(3).

Next, the Court turns to the question of the balance of payments. The parties do not dispute that SAMBA is entitled to reimbursement of its claimed overpayment. Instead, the focus of this litigation has shifted to the question of whether SAMBA was permitted to terminate Cowger's LTD benefits. Following reduction for her SSA and FERS benefits, Cowger has asserted a right to monthly payments of $552.83 from SAMBA, arguing that SAMBA lacked the authority to terminate her payments in December, 2008, and that, in any event, by withholding the moneys, SAMBA has recovered the full reimbursement amount. Moreover, Cowger contends that SAMBA owes her the difference between the accumulated LTD payments and the overpayment amount. According to SAMBA, however, it acted well within its rights when it terminated Cowger's LTD benefits and contends that it has recovered none of the reimbursement amount.

In determining who is owed what amounts, the Court first looks to the relevant contract lanugage. Provision four of the RA

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**                1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

clearly creates a right of termination in SAMBA with a condition precedent:

> If I [Cowger] fail to comply with any of these obligations [including repaying SAMBA the full amount of benefit offsets that it determines are due under the terms of the SPD], I understand and agree that SAMBA may terminate my LTD benefits and that SAMBA may recoup its collection costs, including reasonable attorneys' fees, from me or from my beneficiaries in the event of my death.

In West Virginia, courts are required to "construe the contract made by the parties, not to make a contract for them, or to alter the contract they have made so as to conform it to the court's notion of the contract they should have made in view of the subject-matter and the surrounding facts and circumstances." Bischoff v. Francesa, 56 S.E.2d 865, 870 (W. Va. 1949).

Here, there is no dispute that, at the time it terminated Cowger's LTD benefits, SAMBA was entitled to reimbursement of its overpayment. Likewise, there is no dispute that Cowger failed to repay that amount in accordance with SAMBA's repayment plan offer, or its subsequent demands. Thus, applying provision four of the RA, SAMBA possessed the discretionary authority to terminate Cowger's LTD benefits when she failed to reimburse SAMBA in December, 2008.

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**                1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

Moreover, SAMBA's decision to exercise its authority and terminate Cowger's LTD benefits was not contrary to law. Cowger concedes that the LTD Plan is a "welfare plan" within the meaning of § 1002(1). By statute, welfare plans are not subject to vesting requirements under ERISA, and "plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995); see also § 1051(1); Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 855 (4th Cir. 1994) ("[A] plan participant's interest in welfare benefits is not automatically vested, and employers have a statutory right to 'amend the terms of the plan or terminate it entirely.'") (quoting Biggers v. Wittek Indus., Inc., 4 F.3d 291, 295 (4th Cir. 1993)).

The unambiguous contract language of the RA and the well-settled law that welfare plans do not vest and are subject to sponsor termination provide a sufficient basis for the Court to grant summary judgment to SAMBA. As such, it is unnecessary to address SAMBA's alternative argument that Cowger's failure to exhaust her remedies under the SPD precludes her subsequent claim to LTD benefits.

**SPECIAL AGENTS MUTUAL BENEFIT ASSOC. V. COWGER**  1:13CV6

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 18]**

**IV.**

For the reasons discussed, the Court **GRANTS** SAMBA's motion for summary judgment, **DENIES** Cowger's motion for summary judgment, and **AWARDS** SAMBA the following:

- $28,127.50;
- Pre-judgment and post-judgment interest at 14% per annum, in accordance with provision three of the RA, compounded monthly on the amount due from January 1, 2009 until the time this judgment is satisfied in full; and
- Reasonable attorneys' fees and costs, pursuant to provision four of the RA and § 1132(g)(1).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this order to counsel of record and to remove this case from the Court's active docket.

DATED: March 18, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE